**AIRTOUCH PAGING, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

US West, Inc., Bell Atlantic Telephone Companies, Bell Atlantic–Delaware, Inc., Bell Atlantic–Maryland, Bell Atlantic–New Jersey, Inc., Bell Atlantic–Pennsylvania, Bell Atlantic–Virginia, Inc., Bell Atlantic–Washington, D.C., Inc., Bell Atlantic–West Virginia, Inc., New York Telephone Company & New England Telephone & Telegraph Company & SBC Communications, Inc., Intervenors.

Docket No. 00–4035.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 2000.

Decided Dec. 11, 2000.

Carl W. Northrop, Paul, Hastings, Janofsky & Warner, LLP, Washington, DC (Daniel R. Ball, of counsel), for Petitioner.

Laurel R. Bergold, United States Department of Justice, Washington, DC (Joel I. Klein, Assistant Attorney General, Christopher J. Wright, General Counsel, Catherine G. O'Sullivan, Robert Wiggers, and John E. Ingle, of counsel), for Respondents.

Before OAKES, WINTER and SACK, Circuit Judges.

SACK, Circuit Judge:

Petitioner AirTouch Paging asks us to review the contents of a footnote appearing in a report and order by the Federal Communications Commission (the "Commission") implementing the Telecommuni-

---

1. Pub.L. No. 104–104, 110 Stat. 56 (enacted Feb. 8, 1996).

2. *In the Matter of Implementation of the Local Competition Provisions of the Telecommunica-*

cations Act of 1996 (the "Act" or the "1996 Act"),[1] and the Commission's refusal in a subsequent order to reconsider that footnote.

## BACKGROUND

The dispute centers on the 1996 Act's definition of the term "telephone exchange service." Section 251(b) of the Act imposes several requirements on local exchange carriers ("LECs") in an effort to foster competition in local telecommunications markets. *See* 47 U.S.C. § 251(b)(3) (2000). Several of the competitive benefits of § 251(b) may be available only to providers of "telephone exchange service." Prior to the 1996 Act, the Communications Act defined "telephone exchange service" as "service within a telephone exchange ... operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange...." 47 U.S.C. § 153(r) (1992). The 1996 Act amended this definition to add "comparable service provided through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service." 47 U.S.C. § 153(47) (2000).

In April 1996, the Commission initiated a rulemaking procedure to implement § 251 and other local competition provisions of the Act.[2] One issue on which the Commission sought comment was whether paging and similar services fit within the statutory definition of "telephone exchange service." *Notice of Proposed Rulemaking,* 11 F.C.C.R. at 14,228.

The Commission announced regulations implementing § 251(b) of the Act in two principal reports and orders, referred to

---

*tions Act of 1996, Notice of Proposed Rulemaking,* 11 F.C.C.R. 14,171, 14,228, 1996 WL 191792 (1996).

by the parties as the *First Report*[3] and the *Second Report*,[4] both of which touch on the issue of whether paging qualifies as "telephone exchange service." The *First Report* stated that some types of Commercial Mobile Radio Service, of which paging is one variety, do qualify as "telephone exchange service" as defined by the 1996 Act, *see* 11 F.C.C.R. at 15,998–999, but that paging providers "might not be so classified." 11 F.C.C.R. at 15,996. Air-Touch sought reconsideration of this portion of the *First Report* in a separate petition from the one presently under consideration. The Commission has yet to rule on this petition.

The disputed footnote appears in the *Second Report.* Among many other things, the regulations announced in the *Second Report* bar local exchange carriers from charging discriminatory fees to competitors for certain telephone numbering administration services. *Second Report,* 11 F.C.C.R. at 19,537–38. The Commission expressly extended this protection to paging carriers, but grounded that protection in the common carrier provisions of the Act, *see* 47 U.S.C. §§ 201 and 202(a) (2000), rather than in § 251(b)(3), because "paging carriers . . . are not providers of telephone exchange service or telephone toll service, and therefore are not covered by Section 251(b)(3)." *Second Report,* 11 F.C.C.R. at 19,538. In footnote 700, the Commission commented: "Paging is not 'telephone exchange service' within the meaning of the Act because it is neither 'intercommunicating service of the character ordinarily furnished by a single exchange' nor 'comparable' to such service." *Id.,* at 19,538, n. 700 (quoting 47 U.S.C. § 153(47)).

Two other provisions of the regulations announced in the *Second Report* are also relevant. First, the Commission required LECs to provide public notice of specified network changes and to provide advance notice of such changes to "telephone exchange service provider[s]." 47 C.F.R. § 51.333 (2000). Second, the Commission required LECs to provide "dialing parity" only "to competing providers of telephone exchange and toll services." 47 C.F.R. § 51.205 (2000); *Second Report,* 11 F.C.C.R. at 19,399–400.

AirTouch petitioned the Commission to reconsider footnote 700, the network notice regulations, and other aspects of the *Second Report.* In October 1999, the Commission issued the *Third Order on Reconsideration,*[5] addressing AirTouch's petition and other challenges to the *Second Report.* As to footnote 700, the Commission "decline[d] at this time to reconsider our decision . . . that paging carriers do not provide telephone exchange service as described in section 153(47) of the Act." *Third Order,* 14 F.C.C.R. at 18,022. The Commission noted that the substantive result at issue—that paging carriers are protected from discriminatory numbering administration fees by §§ 201 and 202(a) of the Act—"would not change if we ultimately determined that paging carriers do provide telephone exchange service," and thus that "reconsideration of this issue is unnecessary in the context of this order." *Id.* The Commission also stated that arguments for reconsideration of the dialing parity and network notice issues would be resolved in "future orders." *See* 14 F.C.C.R. at 17,968 § 2.

**3.** *In the Matter of Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, First Report and Order,* 11 F.C.C.R. 15,499, 1996 WL 452885 (1996) ("*First Report*").

**4.** *In the Matter of Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, Second Report and Order and Memorandum Opinion and Order,* 11

F.C.C.R. 19,392, 1996 WL 819798 (1996) (the "*Second Report*").

**5.** *In the Matter of Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, Third Order on Reconsideration of the Second Report and Order and Memorandum Opinion and Order,* 14 F.C.C.R. 17,964 (1999) ("*Third Order*").

AirTouch now challenges both footnote 700 of the *Second Report* and the Commission's refusal in the *Third Order* to reconsider the footnote.

## DISCUSSION

 A party lacks standing under Article III of the Constitution to bring an action in federal court, including a petition for review of an agency order, unless the party has suffered " 'injury in fact'—a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.' " *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 1858, 120 S.Ct. 1858, 1861, 146 L.Ed.2d 836 (2000) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). For this reason, a party generally lacks standing to appeal from " 'a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree.' " *In re O'Brien,* 184 F.3d 140, 141 (2d Cir.1999) (quoting *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241, 242, 59 S.Ct. 860, 83 L.Ed. 1263 (1939)); *Sea–Land Service, Inc. v. Dep't of Transp.,* 137 F.3d 640, 648–49 (D.C.Cir.1998).

AirTouch does not dispute that it prevailed on the issue of numbering fees, the discussion of which is annotated by footnote 700. It argues, however, that the Commission's exclusion of paging from the definition of "telephone exchange service" in footnote 700 deprives it of several other benefits of the 1996 Act. Specifically, AirTouch claims that the Commission's interpretation will deprive it of nondiscriminatory access to telephone numbers; "dialing parity;" and "advance notice of planned network changes."

None of these asserted injuries is at present sufficiently concrete, actual or imminent to confer standing upon AirTouch. The *Third Report* made clear that "all telecommunications common carriers, including paging carriers" are entitled to nondiscriminatory access to telephone numbers. 14 F.C.C.R. at 18,017 § 82. The *Third Order* also expressly stated that arguments for reconsideration of the dialing parity and network notice issues will be resolved in "future orders." *See* 14 F.C.C.R. at 17968. Still pending before the Commission, moreover, is AirTouch's separate petition asking the Commission to review its treatment in the *First Report* of the same statutory question raised by this appeal. The present petition is thus "incurably premature." *Bellsouth Corp. v. F.C.C.,* 17 F.3d 1487, 1490 (D.C.Cir.1994).

 AirTouch insists that dialing parity, number access and network change notices are merely "examples" of the injuries inflicted by footnote 700, and that the " 'telephone exchange service' classification permeates the 1996 Act." AirTouch's argument, in essence, is that footnote 700 is, in effect, the Commission's final and binding interpretation of the phrase "telephone exchange service" as it pertains to paging. But footnote 700 merely sets forth one aspect of the Commission's reasoning in issuing a substantive ruling that inflicts no actual or imminent injury upon AirTouch. A party's "mere disagreement with an agency's rationale for a substantively favorable decision, even where such disagreement focuses on an interpretation of law to which a party objects, does not constitute the sort of injury necessary for purposes of Article III standing." *Shell Oil Co. v. F.E.R.C.,* 47 F.3d 1186, 1202 (D.C.Cir.1995) (internal quotation marks and citations omitted).

 Even if the Commission were to view footnote 700 as binding in future proceedings, we would have no jurisdiction to consider the issue unless and until such future proceedings result in a cognizable injury to AirTouch. "[M]ere precedential effect within an agency is not, alone, enough to create Article III standing, no matter how forseeable the future litigation." *Sea Land Service, Inc.,* 137 F.3d at 648 (collecting cases).

The same reasoning applies with even more force to the *Third Order.* That order only reaffirms AirTouch's protection against discriminatory numbering fees and declines "at this time" to reconsider that portion of its reasoning with which Air-Touch disagrees. It thus inflicts on Air-Touch no conceivable injury beyond that allegedly inflicted by the *Second Report.*

### CONCLUSION

For the foregoing reasons, the petition for review is dismissed.